UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARIA CHRZAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-cv-00225 |
| v. | ) | |
| | ) | |
| ADT SECURITY SERVICES, INC., | ) | JUDGE SHARP |
| | ) | MAGISTRATE JUDGE BRYANT |
| Defendant. | ) | |

## MEMORANDUM

Defendant ADT Security Services, Inc. ("Defendant" or "ADT") filed a Motion for Summary Judgment (Docket Entry No. 20), to which Plaintiff Maria Chrzan ("Plaintiff") filed a response (Docket Entry No. 29), and Defendant filed a reply (Docket Entry No. 32). For the reasons discussed herein, Defendant's motion will be granted and this case will be dismissed.

## FACTS

Plaintiff, Maria Chrzan, was born in Poland and immigrated to the United States in 1989.[1] After residing in Memphis, Tennessee, for a number of years, she moved to Nashville, Tennessee. (Docket Entry No. 23 Ex. 2 at 14-16). In November 2004, Plaintiff was hired by Defendant, ADT Security Services, Inc., as a Residential Sales Representative in the company's Nashville, Tennessee sales and service office. Defendant sells, installs and maintains commercial and residential electronic security and monitoring systems.

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket No. 29 Ex. 2) and related declarations and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Defendant maintains an EEO Policy, as well as an anti-harassment policy. These policies are provided to employees in several formats, including in the company's Guide to Ethical Conduct and the ADT Team Member Handbook. (Docket Entry No. 26 at 1). Plaintiff acknowledged her receipt and commitment to these policies on several occasions through acknowledgment of receipt of the Team Member Handbook and the Guide to Ethical Conduct. The Team Member Handbook that Plaintiff received also contains Standards of Conduct. Violation of these Standards can lead to immediate termination. The ADT Standards of Conduct prohibit unlawful harassment. The Standards of Conduct also prohibit employees from "behaving in a way that is insubordinate, disrespectful, or rude, including, using obscene, vulgar or abusive language . . . towards a customer or ADT team member."

Upon her employ with ADT, Plaintiff subsequently applied for and was granted a transfer to a Small Business Sales Representative position on January 25, 2005. As a Small Business Sales Representative in the Nashville office, Plaintiff reported to Eric Rader ("Rader"), Sales Manager, who in turn reported to Matt Eckert ("Eckert"), Area Sales Manager. According to Plaintiff, the Small Business department was comprised entirely of American males, and she was the only female sales representative and the only one of foreign origin. (Docket Entry No. 29 Ex. 1 at 59).

Plaintiff's job duties consisted of closing sales, bringing in business, and cold-calling. (Docket Entry No. 29 Ex. 1 at 18). Plaintiff maintains it was her dream job and that she was very successful in that position. (*Id.* at 18, 37).

ADT maintains a Call Monitoring Center ("CMC") in Jacksonville, Florida. Employees at the CMC interact with sales employees in various ADT offices, including Nashville. On September 17, 2008, Plaintiff was engaged in a work-related telephone

conversation with Anya Pelham ("Pelham"), an ADT employee in the CMC. This telephone conversation was tape recorded. On the tape, Plaintiff can be heard to make the following statement to Pelham: "Ma'am you know, I don't know, African-American people working with ADT trying to be difficult, why?"[2] In response, Pelham can be heard to express that she felt disrespected by this comment. According to Eckert, Pelham immediately complained to her supervisor, Eric Campbell ("Campbell"), who then forwarded the issue to Rader. (Docket Entry No. 25 at ¶7). Eckert consulted with Rader, Audrey Courseault ("Courseault"), Human Resource Manager, and Susan Mansolillo ("Mansolillo"), Human Resource Director, regarding the complaint raised against Plaintiff. (*Id.* at ¶8). After conducting an investigation of the incident, Rader, Eckert, Mansolillo and Courseault concurred that Plaintiff's behavior violated the company's discrimination and anti-harassment policies as well as the Guide to Ethical Conduct. (*Id.* at ¶10 and Docket Entry No. 26 at ¶13). Eckert terminated Plaintiff on September 24, 2008, for violation of Company policies. (Docket Entry No. 25 at ¶11).

During this meeting, Eckert informed Plaintiff that she was being terminated for making a racial statement to another employee in violation of ADT's policies. Plaintiff admitted to Eckert that she made the statement to Pelham, but denied that the statement was racial. Plaintiff acknowledges she was terminated for making this statement. Neither Eckert nor Courseault are aware of any situation where a complaint has been made against an ADT employee for engaging in conduct similar to the conduct engaged in by Plaintiff and the employee was not fired. (Docket Entry No. 25 at ¶13, Docket Entry No. 26 at ¶16).

---

[2] In her deposition, Plaintiff testified that she said "Why African-American people are not helpful." (Docket Entry No. 29 Ex. 1 at 19).

Plaintiff had previously received written warnings in the form of two Personal Improvement Plans for engaging in unethical conduct. (Docket Entry No. 25 at ¶9, Docket Entry No. 26 at ¶12). Plaintiff's first written warning was because "she called a job into the telemar system without having proper signature." (Docket Entry No. 29 Ex. 1 at 34). Plaintiff testified that two fellow co-workers conducted the same infraction, on the same day, and were not given the same warning. (*Id.* at 32). According to Plaintiff, the second written warning occurred when she called in a job using an incorrect address/suite number. (*Id.* at 44-45).

When questioned about her reason for filing the lawsuit, Plaintiff testified that her co-workers would call her bad names, such as "Polack", "F" names, and "F-B" names. (*Id.* at 53). She testified that some of these comments were made to her face, and others she overheard. (*Id.* at 54-57, 60). Plaintiff further testified that Nicki Clayton ("Clayton"), a Human Resource representative[3], was present and witnessed certain derogatory statements made about Plaintiff. (*Id.* at 69-71). Throughout her employment, Plaintiff never complained about any derogatory comments allegedly made about her Polish heritage, including the use of the term "Polack" (or any other alleged instance of national origin discrimination) to anyone at ADT.[4] (*Id.* at 65-66, 71 and Docket Entry No. 23 Ex. 2 at 85). Plaintiff is unaware of anyone at ADT

---

[3] According to Courseault, Clayton is an ADT administrative employee. She is not a management employee and is not responsible for enforcing ADT's anti-harassment policy. (Docket Entry 26 at ¶17).

[4] In Plaintiff's response, she contends to have testified in her deposition that "members of management and human resources were present… when [she] was subjected to abusive language (citing to her deposition at 53-60). (Docket Entry No. 29 at 1). The Court has reviewed those portions and does not find such testimony. Plaintiff further alleges that she "did in fact speak to her immediate supervisor, [Rader], about the remarks made to and about her, and was told to ignore them and just do her job." (*Id.*). There is no citation to the record nor has a sworn affidavit been filed for such contention. Plaintiff has failed to comply with the Local Rules; and therefore, the Court will not accept this statement as true. *See* Local Rule 56.01(c).

reporting to human resources management or Plaintiff's managers any allegation that someone had made a derogatory comment about her Polish heritage. (Docket Entry No. 23 Ex. 2 at 85).

## **ANALYSIS**

Plaintiff, an adult of Polish decent, asserts a single claim of national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*[5] She alleges Defendant discriminated against her on the basis of national origin in the terms and conditions of employment and by terminating her employment. Defendant has moved for summary judgment on that claim.

**I.     Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e).

---

[5] Plaintiff also alleged discrimination violations under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*. These claims were dismissed pursuant to an Order entered March 11, 2011, on the grounds that they were time-barred. (Docket Entry No. 31).

The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Title VII National Origin Discrimination Claim

Plaintiff has not produced any direct evidence of national origin discrimination. Therefore, in the absence of direct evidence, Plaintiff's claim is analyzed under the familiar evidentiary framework for cases based on circumstantial evidence set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under that framework, Plaintiff must first establish a *prima facie* case of national origin discrimination. *Id.* at 802. If she carries that burden, the burden shifts to Defendant, who must present a legitimate, non-discriminatory reason for its actions. *Id.* at 802-803. Upon Defendant's offer of a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to demonstrate that the proffered reason is pretextual, masking intentional discrimination. *Id.* at 804.

To establish a *prima facie* case of national origin discrimination under Title VII, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than a similarly situated employee who was not a member of the protected class, or she was replaced by a person outside the protected class. *See Peltier v. United States*, 388 F.3d 984, 987

(6th Cir. 2004). Defendant does not dispute that Plaintiff has established three of the elements required for a *prima facie* case. Defendant contends, however, that Plaintiff cannot satisfy the fourth element – whether similarly situated non-Polish employees were treated differently than Plaintiff.

To be deemed similarly-situated, the individuals with whom Plaintiff seeks comparison must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Hughes v. General Motors Corp.*, 212 Fed.Appx. 497, 503 (6th Cir. 2007). Plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly situated. *Hatchett v. Health Care and Retirement Corp. of Am.*, 186 Fed.Appx. 543, 548 (6th Cir. 2006). Rather, Plaintiff and the employee with whom Plaintiff seeks to compare herself must be similar in all of the relevant aspects. *Id.*; *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir. 2002). This means Plaintiff must prove that all of the relevant aspects of her employment situation are nearly identical to those outside of the protected class who she alleges were treated more favorably. *Hatchett*, 186 Fed.Appx. at 548.

In her response, Plaintiff argues that the only distinguishable difference between herself and comparable ADT employees is that she did not complain about the remarks made to her because they were made in the presence of both management and human resources. (Docket Entry No. 29 at 8).[6] Plaintiff did, in fact, testify that she never complained to anyone within

---

[6] Plaintiff further challenges Defendant's argument stating she has satisfied the fourth element by "testifying that her male counterparts admitted to committing the same violation on the same day on which she committed it, and further admitted that they were not disciplined for it" (wherein Plaintiff was given a written warning for calling a job into the telemar system without

ADT management about derogatory comments made to her or in her presence. (Docket Entry No. 29 Ex. 1 at 65-66, 71 and Docket Entry No. 23 Ex. 2 at 85). However, as stated above, Plaintiff's designated citations to her deposition testimony (pages 53-60) do not reveal derogatory statements directed to or about her were made in the presence of any member of ADT management. *See* (Docket Entry No. 29 at 1). Even if Plaintiff could prove management was aware of remarks made to her, she still has not produced any evidence to indicate the national origin of any similarly-situated employees. Without any evidentiary support, Plaintiff merely asserts "it is stated plainly in the Complaint that [Plaintiff] was comparing herself to American counterparts" and argues "it is unreasonable to expect [her] to be able to produce evidence of the national origin of her co-workers." (Docket Entry No. 29 at 8-9). Because Plaintiff has not identified the national origin of any other ADT employees reported to who have made derogatory racial comments similar to those made by Plaintiff and were not terminated, she cannot establish a *prima facie* case of national origin discrimination.

Even if Plaintiff could establish a *prima facie* case of national origin discrimination, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff. Plaintiff concedes (1) ADT maintains an EEO Policy and anti-harassment policy, (2) she received and committed to these policies on several occasions through acknowledgment of receipt of the Team Member Handbook, (3) violation of said policies can lead to immediate termination, (4) she engaged in a work-related telephone conversation with an ADT employee, and (5) the conversation was tape recorded, wherein she can be heard making the following statement, "Ma'am you know, I don't know, African-American people working with ADT trying to be difficult, why?" (Docket Entry No. 29 Ex. 2 at 2-3). Defendant has introduced the

---

having proper signature). (Docket Entry No. 29 at 7)(italics removed). As Plaintiff's single claim is based on national origin (and not gender discrimination), this contention is not sufficient to satisfy the fourth element of her *prima facie* case.

declarations of Matt Eckert, ADT Area Sales Manager, and Audrey Courseault, ADT Human Resources Manager. According to Eckert and Courseault, Plaintiff's conduct (during the telephone call) violated the company's discrimination and anti-harassment policies as well as the Guide to Ethical Conduct. (Docket Entry No. 25 at ¶10, Docket Entry 26 at ¶13). Plaintiff was ultimately terminated by Eckert for violating these company policies. (Docket Entry No. 25 at ¶11). Plaintiff's ethnic heritage and/or national origin was not considered in the decision to terminate her. (*Id.* at ¶ 12). Plainly, Defendant has articulated a legitimate and permissible reason for the employment decision.

As Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove that Defendant's stated reasons are a pretext for national origin discrimination. To show pretext, Plaintiff must produce evidence that Defendant's asserted reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." D*ews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Imwalle v. Reliance Med.Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). In order to show that there was no basis in fact for the decision made, "a Plaintiff must put forth 'evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false.'" *Abdulnour v. Campbell Soup Supply Co. LLC*, 502 F.3d 496, 502-03 (6th Cir. 2007). In order to show that Defendant's proffered reason did not actually motivate Defendant's challenged conduct, "Plaintiff must show 'that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or cover up.'" *Id.* at 503 (citations omitted). "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to

expose as a pretext, if indeed it is one." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) (quoted with approval in *White v. Baxter Healthcare*, 533 F.3d 381, 393-394 (6th Cir. 2008)).

Here, in response to Defendant coming forward with a legitimate explanation for the employment decision, Plaintiff argues she became aware that the statement was considered derogatory in American culture *only after* her termination, and "a short period of employment cannot overcome a deeply embedded cultural point of view with which an immigrant was raised." (Docket Entry No. 29 at 9-10 italics in original). Even drawing all inferences in the light most favorable to Plaintiff, the factual record shows that Defendant's proffered reason has ample basis in fact, that the proffered reason did motivate the challenged conduct, and the proffered reason was sufficient to terminate Plaintiff in accordance with ADT's policies.

Plaintiff has not presented evidence of pretext sufficient to create a genuine issue of material fact. As such, Plaintiff's national origin discrimination claim cannot survive a motion for summary judgment.

## **CONCLUSION**

For all of the reasons stated, Defendant's Motion for Summary Judgment (Docket Entry No. 20) will be granted and this case will be dismissed with prejudice.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE